IN THE DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                       **No. CR 09-311 MCA**

PATRICIA JOSEPHINE GREEN, M.D.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's *Opposed Motion to Reconsider Dr. Green's Detention Pending Hearing on Her New Trial Motion. [Doc. 172]* filed in this cause as Document No. 173. Having fully considered the applicable law, the arguments of counsel, the submissions of the parties, and otherwise being fully advised in the premises, the Court grants the motion and will release Defendant from confinement pending the conclusion of evidentiary proceedings on her motion for a new trial. Matters relating to the merits of Defendant's motion for new trial will be addressed by separate order, and in separate proceedings.

## I.  BACKGROUND

Much of the facts underlying this matter have been set out in detail in a previous order. *See* Doc. 199. As such, the Court only summarizes those facts already addressed in depth and recounts only such additional facts as are necessary to explain its decision to release Defendant.

Defendant Patricia Green, a medical doctor, was investigated for prescribing methadone in instances believed inappropriate for medical treatment. [Doc. 199] Agent Phil Caroland led

the sting operation which resulted in the charges against her.  [Id.]  Agent Caroland entered Defendant's medical office in an undercover capacity and wearing a concealed recording device. [Id.]  Defendant ultimately gave him a prescription for methadone.  [Id.]

Defendant was first indicted on February 10, 2009 on a single count of dispensing a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c).  [Doc. 2] Her trial began on July 28, 2010 and, at that trial, she was represented by attorneys Gary Mitchell and Randall Harris.  [Doc. 56]  Immediately before the first trial commenced, Assistant United States Attorney Joel Meyers informed the Court that Agent Caroland, who was the key witness for the Government, was married to an associate working in Mr. Harris' small law office located in the city of Clovis, New Mexico.  [Doc. 199]  Mr. Harris acknowledged this fact and advised the Court that he had discussed this matter with Defendant and had built a firewall within his office so that his associate, Mrs. Caroland, would have no involvement of any kind with or access to information regarding Defendant's case.  [Doc. 199]  The Court engaged in a colloquy with Defendant where she indicated her desire to proceed with Mr. Harris as her representative despite the conflict.  [Doc. 199] Defendant waived the conflict and the Court accepted her waiver.  The trial proceeded.  After many hours of deliberation, the jury was unable to reach a verdict and a mistrial was declared.  [Doc. 57, 199]

Subsequent to the first trial, the Government filed a superceding indictment and included an additional charge alleging violation of §§ 841(a)(1) and (b)(1)(c), (the "death count").  [Doc. 73]  Defendant's second trial commenced on May 23, 2011.  She was represented at that trial by attorneys Randall Harris and Kirk Chavez.  [Doc. 136] It should be noted that Mr. Harris and Mr. Chavez do not practice law out of the same office, and that each attorney was privately

retained.  The issue of the conflict involving Agent Caroland and his wife and was raised anew, as was the matter of the firewall.  [Doc. 199]  Mr. Harris assured the Court prior to the commencement of the second trial that a firewall was in place to protect Defendant and Defendant again indicated, during a colloquy with the Court, a desire to proceed with Mr. Harris as her representative.  [Doc. 199] Defendant expressed her satisfaction with Mr. Harris' representation.  On May 31, 2011, the jury returned a verdict of guilty on one count of dispensing controlled substances for no legitimate medical reason in violation of §§ 841(a)(1) and (b)(1)(c).  [Doc. 148]  Defendant was acquitted on the death count.  [Id.]

Mr. Harris remained as Defendant's attorney until July 26, 2011.  [Doc. 162]  Mr. Chavez withdrew several weeks earlier, on June 29, 2011.  [Doc. 156]  On July 25, 2011, Judith Rosenstein entered her appearance as counsel for Defendant.  [Doc. 161]  Several days later, Jody Neal-Post also entered an appearance as counsel for Defendant.

On September 22, 2011, some sixteen weeks after her conviction, Defendant (through Ms. Rosenstein and Ms. Neal-Post) filed an *ex parte* motion for new trial pursuant to Fed.R.Crim.P. 33.  [Doc. 172]  Defendant filed the motion *ex parte* because she asserted that her motion contained privileged information.  [Doc. 172]  After briefing, a hearing, and oral argument, the Court issued a Memorandum Opinion and Order on November 9, 2011 requiring Defendant to release the *ex parte* motion to the Government to allow the Government an opportunity to review and respond to the arguments made therein.  [Doc. 199]  The motion was released on November 15, 2011, the Government submitted a timely responsive motion on December 7, 2011 [Doc. 210] and Defendant filed a timely reply on December 14, 2011. [Doc. 212]

In her Rule 33 motion, Defendant makes three arguments in support of the contention that she is entitled to a new trial.  First, Defendant claims that she is entitled to a new trial because Mr. Harris labored under the conflict of interest involving Agent Caroland and, although Defendant agreed to waive this conflict and proceed with Mr. Harris as her representative, her waiver was invalid.  [Id. at 16-17] This claim will be referred to as the Caroland conflict.

Defendant next claims that she is entitled to a new trial because Mr. Harris was generally ineffective at her second trial.  [Doc. 172 at 15-16]  Finally, Defendant claims that she is entitled to a new trial because Mr. Harris was ineffective in that he labored under an actual financial conflict of interest. [Id. at 15]  These claims were not made before or during the second trial but were raised for the first time in Defendant's Rule 33 motion.

For purposes of this Court's consideration of the pending motion seeking release from detention, a review of Defendant's arguments reveals that the latter two of the three claims she raises—general ineffectiveness and the financial conflict—are not viable as claims under 33(b)(1) as newly discovered evidence or as claims under 33(b)(2) as based on other grounds and which should be considered as timely due to excusable neglect.  However, I find that Defendant's first argument as to "the Caroland conflict"—that she did not validly waive the right to counsel free of the conflict involving Agent and Mrs. Caroland—does not suffer from the same shortcomings.  Thus, only the first claim–the Caroland conflict-- merits consideration with respect to Defendant's pending request to be released.

## II.  DISCUSSION

Defendant's *Opposed Motion to Reconsider Dr. Green's Detention Pending Hearing on Her New Trial Motion. [Doc. 172]* is governed by 18 U.S.C. § 3143(2), which provides as

4

follows:

> The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless--
> (A)(I) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
> (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

Defendant contends that she should be released from detention because there is a substantial likelihood that her motion for a new trial will be granted and she is not likely to flee or pose a danger to any other person or the community. The success of Defendant's motion for release therefore depends on the substantial likelihood that her motion for a new trial under Fed. R. Crim. P. 33 will be granted.

## A. Fed.R.Crim.P. 33

Federal Rule of Criminal Procedure 33 provides as follows:

> (a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.
> (b) Time to File.
> (1) Newly Discovered Evidence. Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
> (2) Other Grounds. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Generally, "[a] motion for a new trial is not regarded with favor and should only be granted with great caution." *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997).

5

Rule 33 "authorizes district courts to grant new trials 'if required in the interest of justice.'"

*United States v. Gwathney*, 465 F.3d 1133, 1143 (10th Cir. 2006).

> The Rule does not define 'interests of justice' and the courts have had little success in trying to generalize its meaning. Nevertheless, courts have interpreted the rule to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial.

*United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989); *accord United States v. Ring*, 768 F.Supp.2d 302, 310 (D.D.C. 2011). The Tenth Circuit has previously recognized that ineffective assistance of counsel may serve as the foundation for a motion for new trial under Rule 33. *See United States v. Meacham*, 567 F.3d 1184, 1187 (10th Cir. 2009) (observing that "a defendant has the right to seek a new trial as part of the original criminal proceedings (rather than by way of collateral attack) on the grounds of ineffectiveness of counsel.") (internal quotation marks and citation omitted)).

The timing provisions of Rule 33 are of critical significance here given the nature of Defendant's arguments and the fact that her Rule 33 motion was filed some sixteen weeks after trial. Motions for new trial filed more than fourteen days after verdict or a finding of guilt must be grounded on newly discovered evidence. *See* Fed.R.Crim.P. 33(b). Generally, a court lacks authority to grant a motion for new trial based on "other grounds" when that motion is filed beyond the fourteen day window permitted by Fed.R.Crim.P. 33(b)(2). *See Alva v. Teen Help*, 469 F.3d 946, 952 (10th Cir. 2006) (observing that Rule 33 is an "inflexible" "claim processing rule" that will assure relief to a party who properly complies with the timing provisions of the rule but not to one who forfeits them); *see also United States v. Miller*, 869 F.2d 1418, 1420 (10th Cir. 1989) (observing that the restrictive time period for filing a motion for a new trial,

6

based upon any ground other than newly discovered evidence, limits the district court's power to act and collecting cases stating same).

**B.  Defendant's Arguments**

As noted, Defendant filed her motion for new trial some sixteen weeks after the verdict. She brings her motion both under 33(b)(1) as a motion based on newly discovered evidence filed within the three year time limit for such motions and, *alternatively*, under 33(b)(2) as a motion based on "other grounds" and excusable neglect.

**Rule 33.(b)(1): newly discovered evidence**

For Defendant to prevail on a motion for a new trial based on newly discovered evidence, she must show that:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by [Defendant's] own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

*United States v. Herrera*, 481 F.3d 1266, 1270 (10th Cir. 2007).  Evidence is "material" if it has any reasonable likelihood to affect the judgment of the jury.  *Cf. Giglio v. United States*, 405 U.S. 150, 154 (1972).  The Defendant bears a "severe burden" in establishing that newly discovered evidence probably would result in acquittal.  *United States v. Agurs*, 427 U.S. 97, 111 (1976).  Our Tenth Circuit has explained that asserted ineffective assistance of counsel may not serve as the basis for a motion for a new trial on the ground of newly discovered evidence under Rule 33 where the facts alleged in support of the motion were within the defendant's knowledge at the time of trial.  *See United States v. Johnson*, 12 F.3d 1540, 1548 (10th Cir. 1993)

**Rule 33(b)(2): "other grounds"**

Defendant further claims that her motion is based on other grounds and that excusable neglect justified the filing delay.  [Doc. 172 at 20-21]  In support of her excusable neglect claim, Defendant cites Fed.R.Crim.P. 45(b)(1)(B) which provides that "[w]hen an act must or may be done within a specified period, the court . . . may extend the time . . . on a party's motion made . . . after the time expires if the party failed to act because of excusable neglect."  Citing this rule, Defendant claims that her "lack of knowledge of her grounds was excusable neglect."  [Doc. 172 at 21]  Beyond this cursory assertion, Defendant does little to explain the underpinnings of her excusable neglect claim.

The Tenth Circuit has never squarely addressed whether Fed.R.Crim.P. 45 may be utilized to extend the time limits for the filing of a motion for new trial under Rule 33(b)(2). Defendant directs the Court to *United States v. Johnson*, 12 F.3d 1540, 1548 (10th Cir. 1993) as support for her assertion that excusable neglect may be considered to enlarge the timing requirements for a Rule 33 motion; however, *Johnson* does not support Defendant's claim.  The issue in *Johnson* was whether the defendant's "motion should have been considered as a motion based upon newly discovered evidence and therefore timely within the two-year period allowed by [former] Fed.R.Crim.P. 33."  *Id.*  Rule 45(b)(1)(B) and excusable neglect were not considered in *Johnson*; the case is inapposite.

This Court's independent research reveals that the Tenth Circuit stated in dicta that excusable neglect may be utilized to extend the timing provisions in Rule 33.  In *Alva*, 469 F.3d at 948, the Tenth Circuit considered whether the timing requirement for filing a notice of appeal in a civil case is jurisdictional or merely a claim processing rule.  In the course of its discussion, the Court touched on (former) Fed.R.Crim.P. 33 and, in a footnote, explained that "while the

8

defendant must still file a motion for new trial within seven days, a motion for extension of time

is permitted under Rule 45 and the court may consider an untimely motion if it determines the

defendant's delay was due to excusable neglect."  *Id.* at 952 n.11.  Defendant cites out-of-circuit

authority in agreement with the dicta in *Alva*, [Doc. 172 at 20-21] *see United States v. Munoz*,

605 F.3d 359 (6th Cir. 2010).  Leading commentators agree, as well.  *See* 3 Wright, et. al.

Fed.Prac.&Proc.Crim. § 590 (4th ed.) ("Because the time limits [provided in Rule 33] are no

longer jurisdictional, courts now have the flexibility to choose to extend the time limit allowed in

Rule 33 due to excusable neglect.").  Accordingly, the Court concludes that excusable neglect

may be considered to extend the filing time for a Rule 33 motion.  The Court notes that

Defendant has failed to identify or address the applicable legal standards in this analysis.

"In determining whether the filing [of a Rule 33 motion] was late due to excusable

neglect, courts use the four-factor *Pioneer* [*Inv. Services Co. v. Brunswick Associates Ltd.

Partnership*, 507 U.S. 380, 392 (1993)] test . . . ."  *See* 3 Wright, et. al., *supra*.  Generally,

"excusable neglect is a somewhat 'elastic concept . . . ."  *In re Lang*, 414 F.3d 1191, 1200 (10th

Cir. 2005), quoting *Pioneer Inv. Services Co.*, 507 U.S. at 392.  "[T]he determination is . . . an

equitable one, taking account of all relevant circumstances . . . ."  *In re Lang*, 414 F.3d at 1200.

"Factors specifically enumerated include: (1) the danger of prejudice to opposing parties; (2)

length of delay in judicial proceedings and its impact; (3) the reason for the delay, including

whether it was in the control of the late-filer; and (4) whether the late-filer acted in good faith."

*Id.*  These factors "do not carry equal weight; the excuse given for the late filing must have the

greatest import.  While [the other factors] might have more relevance in a closer case, the

reason-for-delay factor will always be critical to the inquiry."  *Munoz*, 605 F.3d at 372

(alterations in original) (internal quotation marks and citation omitted); *accord United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004).

In addition, Courts are precluded from simply attributing error to counsel so as to excuse a defendant's late filing.  *See Pioneer Inv. Services Co.*, 507 U.S. at 396-97.  "[C]lients must be held accountable for the acts and omissions of their attorneys" and a party is "deemed bound by the acts of [their] lawyer-agent . . . ."  *Id.*  "Any other notion would be wholly inconsistent with our system of representative litigation . . . ."  *Id.* at 397.  Yet, the Court notes "that in the habeas context, courts have long made special procedural allowances for defendants who fail to timely raise ineffective-assistance-of-counsel claims against lawyers who continue to represent them at the time those claims would properly have been raised."  *Munoz*, 605 F.3d at 369.

**The Caroland Conflict**

As described above, the relationship between Monica Caroland and Agent Caroland was first brought to the Court's attention at Defendant's first trial by Assistant United States Attorney Meyers who indicated that he believed this relationship gave rise to a conflict involving Mr. Harris but that the conflict could be waived.  [Doc. 199] It is noteworthy that the existence of a conflict was initially raised prior to the first trial by the Government, and not by either of Defendant's attorneys, Harris and Mitchell.  The Court further notes that the conflict was disclosed at the "eleventh hour", just prior to the commencement of the trial.  Upon disclosure of the conflict, Mr. Harris advised the Court, in the presence of Defendant and co-counsel Mitchell, that he built a firewall within his office so that Mrs. Caroland would have no involvement of any kind with Defendant's case and would have no access to information regarding Defendant's case or defense strategies.  [Id.]  The Court engaged in a brief colloquy with Defendant regarding the

conflict.  [Id.]  During that colloquy, the Court inquired whether Defendant had discussed this issue with Mr. Harris and Mr. Mitchell, whether she understood the conflict, and whether she agreed to waive the conflict and proceed as was represented by Mr. Harris.  [Id.]  Defendant replied in the affirmative to all of these questions.  [Id.] The first trial then commenced.

The Caroland conflict resurfaced at the commencement of the second trial.  [Id.] Defendant was then represented by Mr. Harris and Mr. Chavez.  Mr. Harris again confirmed that the firewall was in place. [Id.]  Defendant was present during this exchange.  The Court then engaged in a colloquy with Defendant similar to the colloquy at the first trial and inquired whether Defendant understood the nature of the Caroland conflict and whether she wished to proceed with Mr. Harris as her representative.  [Id.]  Defendant again responded in the affirmative.  [Id.]  Defendant expressed her satisfaction with Mr. Harris as her attorney.

Defendant now claims, in her Rule 33 motion, that the waiver at her second trial was invalid.  She bases this claim on two grounds.  She argues that Mr. Harris misinformed the Court about the firewall and the efforts taken to minimize and resolve the Caroland conflict and further argues that, under the circumstances, the Court's colloquy was legally insufficient under Tenth Circuit precedent.  As a part of the briefing of the motion for new trial, Defendant submitted several sworn affidavits calling into question whether Mr. Harris actually created any form of firewall to ensure that Mrs. Caroland was walled off from Defendant's case and further calling into question whether any such firewall could exist in light of the manner in which Mr. Harris' law office is organized. [Doc. 172-2]

For the reasons later explained, the Court is persuaded that this claim is timely under Rule 33 and provides a legitimate potential basis for new trial in the interests of justice.

11

### 1.      New Evidence

Defendant's motion for a new trial is based, in relevant part, on new evidence of Mr. Harris' ineffective assistance of counsel regarding the Caroland conflict.  Although some of the facts relevant to Mr. Harris' alleged ineffective assistance of counsel were known to Defendant at the time of trial, the proffered affidavits suggest that other facts were not.  For example, the affidavits suggest that Mr. Harris affirmatively misrepresented to Defendant, the Court and apparently the Government, the nature and extent of the alleged firewall between Defendant's case and Mrs. Caroland.  *See Johnson*, 12 F.3d at 1548 ("[W]here the facts relevant to ineffective assistance are not known to the defendant until after trial, they may be raised on a "newly discovered evidence" motion under Rule 33.").  According to the affidavits, Defendant's failure to learn of this evidence was not due to Defendant's lack of diligence but, rather, Mr. Harris' affirmative and misleading representations.  The new evidence is not merely impeaching, but material to Defendant's Sixth Amendment right to conflict-free counsel.  For the reasons explained below, the new evidence, if true, may be of such a nature as to merit a new trial in the interest of justice.

### 2.      Other grounds

Alternatively, the Court concludes that Defendant's motion is timely under Rule 33(b)(2) because it is based on "other grounds" and excusable neglect justifies the late filing of this claim.

Generally, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."  *Wheat v. United States*, 486 U.S. 153, 108 (1988); *see also United States v. Evanson*, 584 F.3d 904, 909 (10th Cir. 2009) (same).  Effective assistance of counsel is

a fundamental constitutional right essential to a fair trial. *Holloway v. Arkansas*, 435 U.S. 475, 489 (1978). A defendant's right to the effective assistance of counsel includes a right to "representation that is free from conflicts of interest." *United States v. Cook*, 45 F.3d 388, 393 (10th Cir.1995) (internal quotation marks and citation omitted). "Purported waivers of fundamental constitutional rights are subject to the most stringent scrutiny." *United States v. Geittmann*, 733 F.2d 1419, 1423 (10th Cir. 1984). "Because of the potentially grave consequences of their waiver, courts indulge every reasonable presumption against the loss of constitutional rights." *Id.* (internal quotation marks and citation omitted).

The existence of the intimate relationship between Monica Caroland and Agent Caroland gave rise to the existence of a conflict that affected Mr. Harris; all parties agreed as much at trial and it was the Government who first brought the issue of the Caroland conflict to the Court's attention. The Court remains confident that Mr. Harris was indeed conflicted.

Attorneys appearing before this Court are bound by the New Mexico Rules of Professional Conduct, *see* D.N.M.LR-Cr. 57.2, and these rules are relevant to this Court's assessment of conflicts. *Evanson*, 584 F.3d at 910. Under the New Mexico Rules of Professional Conduct, Monica Caroland could not have represented Defendant in light of the fact that her husband was the Government's key witness and had provided the field work which led to the prosecution against Defendant. *See* NMRA 16-107(A) ("a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a third person . . . ."); *see also United States v. Harris*, 846 F.Supp. 121, 128 (D.D.C. 1994) ("defense counsel's substantial personal

13

relationship with an adverse witness in this case establishes an actual conflict of interest."). Because Mrs. Caroland was an associate in Mr. Harris' law practice, this conflict was imputed to Mr. Harris. *See* NMRA 16-110 ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so . . . .").

The existence of the Caroland conflict was brought to this Court's attention at trial and in a timely fashion; thus, the principles articulated in *Holloway v. Arkansas*, 435 U.S. 475 (1978) apply. *See United States v. Gallegos*, 108 F.3d 1272, 1280 (10th Cir. 1997) (observing that *Holloway* "set forth principles for evaluating whether a defendant's right to conflict-free representation has been violated in situations where the alleged conflict of interest has been brought to the trial court's attention in a timely fashion."). *Holloway* instructs that trial courts, upon learning of a potential conflict, must either: (1) appoint separate counsel to represent Defendant; (2) take adequate steps to ascertain whether the risk was too remote to warrant separate counsel; or (3) determine if Defendant was willing to waive her right to conflict-free representation. *Gallegos*, 108 F.3d at 1282 (quoting *Holloway*, 435 U.S. at 483-84 & n. 5). "[F]ailure to take one or more of these measures requires reversal." *Id.*

Although *Holloway* was a multiple representation case, the Tenth Circuit has made clear that a district court's duty to comply with the dictates of *Holloway* "arise[s] whenever there is the possibility that a criminal defendant's attorney suffers from any sort of conflict of interest." *Cook*, 45 F.3d at 393. "This is so because a trial court has an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Id.* (internal quotation marks and citation omitted).

In this case, the Court invoked the third option described in *Holloway* and conducted a colloquy with Defendant that resulted in her waiver of her right to conflict free counsel and to proceed with Mr. Harris as her representative.  Defendant challenges the sufficiency of the colloquy.

The Tenth Circuit has established certain prerequisites for a valid waiver to conflict free counsel.  *United States v. Winkle*, 722 F.2d 605, 611 (10th Cir. 1983).  The Court must "affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel."  *United States v. Winkle*, 722 F.2d 605, 611 (10th Cir. 1983).  Our Circuit has explained that the waiver must be a "knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences."  *Gallegos*, 108 F.3d at 1281.  "Even when a defendant seeks to proceed with conflicted counsel by waiving the conflict, a district court retains authority to reject the proffered waiver to preserve ethical standards and ensure a fair trial."  *United States v. Evanson*, 584 F.3d 904, 909 (10th Cir. 2009).  "[T]he court is not obligated to accept a waiver and allow continued representation if it determines that to do so would not be in the best interests of justice."  *United States v. Trujillo*, 302 F.Supp.2d 1239, 1249 (D.Kan. 2004).  Trial courts are allowed substantial latitude in refusing waivers of conflicts of interest.  *Wheat*, 486 U.S. 163 (concluding that the district court has "substantial latitude" in refusing waivers of conflicts of interest not only in cases involving actual conflicts but also in cases where a potential for conflict exists which may or may not burgeon into an actual conflict).

During the course of the colloquy at both Defendant's first and second trial (and in the

15

presence of Defendant and co-counsel Mitchell and Chavez), Mr. Harris represented to the Court

that he had erected a firewall to protect Defendant and to minimize and resolve the Caroland

conflict.  The Court relied on the veracity of this statement, and his representations as an officer

of the Court, in determining to accept Defendant's waiver.  The existence of the firewall assured

the Court that Mr. Harris would be able to represent Defendant while at the same time

precluding Mrs. Caroland from learning of confidences or defense strategies.  Walling-off Mrs.

Caroland ensured that there was no chance Agent Caroland and the Government could learn,

through either purposeful conduct or inadvertence, of Defendant's confidences and trial

strategies.  *Cf. Smith v. Robbins*, 328 F.Supp. 162, 164-65 (D.C.Me. 1971) (observing that "[a]

part of the guarantee of the effective assistance of counsel is the opportunity for free and private

communication between the attorney and his client, free from third-party interception of

confidences that may be exchanged" and collecting cases stating same).

   Defendant has now proffered affidavits indicating that Mr. Harris may have

misrepresented the actions he took to ensure a firewall around Mrs. Caroland.  The affidavits

suggest that either no firewall was ever truly contemplated and put into place or that the firewall

that was implemented was effectively nonexistent or a sham.  This, in the eyes of the Court,

could constitute "other grounds' justifying a new trial under Rule 33(b)(2).  The discovery of this

new information by new counsel, after the passage of fourteen days, could reasonably constitute

excusable neglect.

   The Court presumes, for the purposes of the pending motion, that Defendant relied on

Mr. Harris' representations, just as the Court did, when considering whether to waive her right to

conflict free counsel.  If, after full development of the relevant evidence, the representations in

16

the proffered affidavits are borne out, Defendant's waiver could be deemed invalid because she could not have knowingly waived the right to conflict free counsel with sufficient awareness of the relevant circumstances and likely consequences.

      Mr. Harris' alleged misrepresentations also raise concerns over whether this Court's colloquy was sufficient under the circumstances.  The Court relied on Mr. Harris' representations in deciding how thorough a colloquy was necessary.  While "[m]ere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver," the court should seek a narrative response to ensure that the defendant "has been advised of his right to effective representation, [and] that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict . . . ." *Trujillo*, 302 F.Supp.2d at 1250.  If the Court understood that Mr. Harris did not intend to erect a firewall around Mrs. Caroland or that Mr. Harris' law office is organized in such a manner that there was truly no way of verifying that Mrs. Caroland would not be privy to defense strategies and Defendant's confidences, the Court would have been far more thorough in its colloquy with Defendant.  Indeed, the Court may not have accepted Defendant's waiver at all if the affidavits Defendant has proffered are accurate.  *Cf. Evanson*, 584 F.3d at 911 (observing that the issue of conflicts and disqualification "are not assessed with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between the parties are seen through a glass, darkly.") (internal quotation marks and citation omitted).

      In short, the Court was under an obligation to ensure that Defendant understood "the nature of the situation" regarding Mr. Harris and the Caroland conflict and that Defendant "knowingly and intelligently made the decision to proceed" with Mr. Harris.  *Winkle*, 722 F.2d at

611.  The Court could not have succeeded in this capacity if Mr. Harris misrepresented facts and the Court relied on those facts.  If the waiver was invalid, the Court cannot be said to have complied with the dictates of *Holloway*.  *Cf. United States v. Allen*, 895 F.2d 1577, 1580 (10th Cir. 1990) (considering the significance of an invalid waiver in the context of a defendant's decision to waive the right to counsel altogether and concluding that prejudice is assumed because "[a]cceptance of an invalid waiver in violation of a defendant's Sixth Amendment rights necessarily leaves him entirely without the assistance of counsel at trial.").  Such error would be grounds for a new trial in the interests of justice.  *See Gallegos*, 108 F.3d at 1282 (observing that failure to comply with the dictates of *Holloway* is automatic grounds for reversal).

### Timeliness under Rule 33(b)(2)

Returning now to the issue of timeliness under Rule 33(b)(2), the Court finds that under the circumstances Defendant could not have been aware that Mr. Harris was potentially misrepresenting the circumstances concerning the creation of the firewall in his office.  In addition, it was the Court's obligation to ensure that Defendant understood "the nature of the situation" regarding Mr. Harris and the Caroland conflict and that Defendant "knowingly and intelligently made the decision to proceed" with Mr. Harris as her representative.  *Winkle*, 722 F.2d at 611.  Any failure of the Court to further explore the nature of the firewall, due to Mr. Harris' misrepresentations, should not be attributed to Defendant.  Thus, the reasons for delay weigh in Defendant's favor.  The length of delay also weighs in Defendant's favor as she moved as quickly as possible to submit her motion for new trial and to alert the Court of the possible misrepresentations as soon as she obtained new counsel in July of 2011.  Defendant could not have been expected to file her motion earlier, given Mr. Harris' alleged ineffective assistance of

counsel and affirmative misrepresentations of fact.  The Court finds that Defendant acted in good faith in submitting her motion for new trial in as timely a fashion as possible under the circumstances.  Even assuming prejudice inures to the Government, the factors on balance weigh in favor of finding excusable neglect.

For purposes of the pending motion for release, the Court is persuaded that Defendant's claim that her waiver was invalid is timely under Rule 33(b)(2).

## III.   CONCLUSION

Trust is at the very core of an attorney-client relationship.  It is of concern to this Court that Mr. Harris may have represented Defendant under a conflict of interest, where the conflict was not validly waived, and under circumstances whereby Defendant, the Court, and possibly the Government, may have been misinformed as to the nature and extent undertaken by him to protect her interests.

The findings and determinations made here do not adjudicate the merits of Defendant's motion for a new trial, which remains pending.  The Court simply finds that, for purposes of the Defendant's motion for reconsideration of detention, there is a substantial likelihood that based on the claim of insufficient waiver of the Caroland conflict, a new trial will be granted.  The Court further finds that with the imposition of sufficient conditions of release, Defendant is not likely to flee or pose a danger to any other person or the community.

**IT IS THEREFORE HEREBY ORDERED** that *Defendant's Opposed Motion to Reconsider Dr. Green's Detention Pending Hearing on her New Trial Motion [Doc 172]* be and hereby is granted.

**IT IS FURTHER ORDERED** that Defendant be immediately released from custody,

under conditions imposed by the Court and the Probation Department, pending resolution of

proceedings relating to her motion for new trial.

**SO ORDERED** this 14th day of February 2012, in Albuquerque, New Mexico.


M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE

20