# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.              No. 09-CR-00311 MCA

**PATRICIA JOSEPHINE GREEN, M.D.**,

    Defendant.

## ORDER

This case is before the Court upon *Dr. Green's Motion for Entry of Judgment as to her Motion for New Trial Based on the "Caroland Conflict."* [Doc. 256]  The Court has considered the motion, the Government's response and Defendant's reply, the record in this case, the applicable law, and is otherwise fully advised.  For the following reasons, the Court denies Defendant's motion.

## I. BACKGROUND

Defendant Patricia Green, a medical doctor, was investigated for prescribing methadone in instances believed inappropriate for medical treatment.  [Doc. 199]  Agent Phil Caroland led the sting operation which resulted in the charges against her.  [Id.]  Agent Caroland entered Defendant's medical office in an undercover capacity and wearing a concealed recording device. [Id.]  Defendant ultimately gave him a prescription

for methadone.  [Id.]

Defendant was first indicted on February 10, 2009 on a single count of dispensing

a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c).  [Doc. 2]

Defendant's trial began on July 28, 2010 and, at that trial, Defendant was represented by

attorneys Gary Mitchell and Randall Harris.  [Doc. 56] It should be noted that Mr. Harris

and Mr. Mitchell do not practice law out of the same office and that each attorney was

privately retained.  Immediately before the first trial commenced, Assistant United States

Attorney Joel Meyers informed the Court that Agent Caroland, who was the key witness

for the Government, was married to an associate working in Mr. Harris' small law office

located in the city of Clovis, New Mexico.  [Doc. 199]  Mr. Harris acknowledged this fact

and advised the Court that he had built a firewall within his office so that his associate,

Mrs. Caroland, would have no involvement of any kind with or access to information

regarding Defendant's case.  [Doc. 199]  The Court engaged in a colloquy with Defendant

where she indicated her desire to proceed with Mr. Harris as her representative despite

this apparent conflict.  [Doc. 199] The nature of the apparent conflict was discussed with

the Defendant and she declared her intent to proceed with her attorneys.   The trial

proceeded.  After many hours of deliberation, the jury was unable to reach a verdict and a

mistrial was declared.  [Doc. 57, 199] It should be noted that at no time during the

pendency or duration of this first trial did the Defendant, Mr. Harris, Mr. Mitchell or the

Government attorneys object to Defendant being represented by Mr. Harris.

Subsequent to the first trial, the Government filed a superceding indictment and

included an additional charge (the death count) alleging violation of §§ 841(a)(1) and

(b)(1)(c).  [Doc. 73]  Defendant's second trial commenced on May 23, 2011 and, at her

second trial, Defendant was represented by attorneys Randall Harris and Kirk Chavez.

[Doc. 136]  It should be noted that Mr. Harris and Mr. Chavez do not practice law out of

the same office, and that each attorney was privately retained.  The matter of the apparent

conflict involving Agent Caroland and his wife was disclosed anew, as was the matter of

the firewall.  [Doc. 199]  Mr. Harris assured the Court prior to the commencement of the

second trial that a firewall was in place to protect Defendant and Defendant again

indicated, during a colloquy with the Court, a desire to proceed with Mr. Harris as her

representative.  [Doc. 199] At no time during the pendency or duration of the second trial

did Defendant, Mr. Harris, Mr. Chavez, or the Government attorneys object to Defendant

being represented by Mr. Harris.

On May 31, 2011, the jury returned a verdict of guilty on one count of dispensing

controlled substances for no legitimate medical reason in violation of §§ 841(a)(1) and

(b)(1)(c).  [Doc. 148]  Defendant was acquitted on the other count (the death count).  [Id.]

Mr. Harris remained as Defendant's attorney until July 26, 2011.  [Doc. 162]  Mr.

Chavez withdrew several weeks earlier, on June 29, 2011.  [Doc. 156]  On July 25, 2011,

Judith Rosenstein entered her appearance as counsel for Defendant.  [Doc. 161]  Several

days later, Jody Neal-Post also entered an appearance as counsel for Defendant.

On September 22, 2011, some sixteen weeks after her conviction, Defendant

(through Ms. Rosenstein and Ms. Neal-Post) filed an *ex parte* motion for new trial

pursuant to Fed.R.Crim.P. 33.  [Doc. 172]  Defendant filed the motion *ex parte* because

she asserted that her motion contained privileged information.  [Doc. 172]  After briefing,

a hearing, and argument, the Court issued a Memorandum Opinion and Order on

November 9, 2011 requiring Defendant to release the *ex parte* motion to the Government

to allow the Government an opportunity to review and respond to the arguments made

therein.  [Doc. 199]  The motion was released on November 15, 2011, the Government

submitted a timely responsive motion on December 7, 2011 [Doc. 210] and Defendant

filed a timely reply on December 14, 2011. [Doc. 212]

In her Rule 33 motion, Defendant made three arguments in support of her

contention that she is entitled to a new trial: (1) that Mr. Harris labored under a conflict of

interest involving Agent Caroland and, although Defendant agreed to waive this conflict,

her waiver was invalid; (2) that Mr. Harris was generally ineffective at her second trial;

and (3) that Mr. Harris was ineffective because he labored under an actual financial

conflict of interest. [Doc. 172] This motion is still pending before the Court.

On September 22, 2011, Defendant also filed an *Opposed Motion to Reconsider*

*Dr. Green's Detention Pending Hearing on Her New Trial Motion* [Doc. 173].  On

February 14, 2012, the Court issued a Memorandum Opinion and Order granting Dr.

Green's motion.  [Doc. 229]  In reaching its conclusion, the Court rejected (for purposes

of her Rule 33 motion) Defendant's second and third arguments in support of her new

trial motion–Mr. Harris' alleged general ineffectiveness and financial conflict–because

they were "not viable claims under 33(b)(1) as newly discovered evidence or as claims

under 33(b)(2) as based on other grounds and which should be considered timely due to excusable neglect." [Doc. 229 at 4] However, the Court held that Defendant's first argument was cognizable in a Rule 33(b)(1) motion because Defendant had proffered newly discovered evidence that Mr. Harris "affirmatively misrepresented to Defendant, the Court and apparently the Government, the nature and extent of the alleged firewall between Defendant's case and Mrs. Caroland." [Doc. 229 at 12]  Alternatively, the Court held that Defendant's new trial motion was cognizable under Rule 33(b)(2) because "[t]he discovery of this new information by new counsel, after the passage of fourteen days, could reasonably constitute excusable neglect." [Doc. 229 at 16]  Because there was "a substantial likelihood that based on the claim of insufficient waiver of the Caroland conflict, a new trial will be granted," the Court ordered Defendant to be released pending resolution of proceedings relating to her new trial motion. [Doc. 229 at 19-20]

It is important to note that the Court issued such a holding only within the context of determining whether or not to release Defendant from detention, and not for the purpose of adjudicating, finally, the merits of her request for a new trial.

On May 15, 2012, Defendant filed the present motion for entry of judgment on her new trial motion. [Doc. 256]  Defendant contends that an evidentiary hearing is not necessary on her new trial motion because Mr. Harris was laboring under a conflict of interest and, pursuant to Holloway v. Arkansas, 435 U.S. 475 (1978), reversal of Defendant's conviction is automatic.  Defendant further contends that her purported waiver of the Caroland Conflict was invalid because the Court did not engage in a

sufficient colloquy and, regardless, the conflict "is of such a serious nature that no

rational defendant would knowingly and intelligently desire [Mr. Harris'] representation."

[Doc. 256 at 10 (quoting United States v. Schwarz, 283 F.3d 76, 95 (2d Cir. 2002)].  The

Government responds that an evidentiary hearing is necessary because Defendant did not

object to Mr. Harris' representation at trial and, therefore, Defendant must demonstrate

that Mr. Harris "actively represented conflicting interests" and that the "conflict of

interest adversely affected [her] lawyers performance." [Doc. 258 at 5, (quoting Cuyler v.

Sullivan, 446 U.S. 335, 350 (1980)].

## II.    DISCUSSION

"The Sixth Amendment's right to the effective assistance of competent counsel

includes the right to conflict-free representation and is rooted in the fundamental right to a

fair trial."  Stouffer v. Reynolds, 168 F.3d 1155, 1161 (10th Cir. 1999) (internal quotation

marks and citations omitted).  "It follows from this that assistance which is ineffective in

preserving fairness does not meet the constitutional mandate and it also follows that

defects in assistance that have no probable effect upon the trial's outcome do not establish

a constitutional violation."  Mickens v. Taylor, 535 U.S. 162, 166 (2002) (citation

omitted).

Ordinarily, a defendant alleging ineffective assistance of counsel must demonstrate

"a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694

(1984).  However, "[i]n certain Sixth Amendment contexts, prejudice is presumed."  Id. at

692.  For example, "prejudice is presumed when counsel is burdened by an actual conflict

of interest," because

> [i]n those circumstances, counsel breaches the duty of loyalty, perhaps the
> most basic of counsel's duties. Moreover, it is difficult to measure the
> precise effect on the defense of representation corrupted by conflicting
> interests. Given the obligation of counsel to avoid conflicts of interest and
> the ability of trial courts to make early inquiry in certain situations likely to
> give rise to conflicts, see, e.g., Fed.Rule Crim.Proc. 44(c), it is reasonable
> for the criminal justice system to maintain a fairly rigid rule of presumed
> prejudice for conflicts of interest. . . . Prejudice is presumed only if the
> defendant demonstrates that counsel "actively represented conflicting
> interests" and that "an actual conflict of interest adversely affected his
> lawyer's performance."

Id. (quoting Cuyler, 446 U.S. at 350).

There is an extremely limited exception to this rule.  In Holloway, the Supreme

Court held that an adverse affect on counsel's performance may be presumed where the

defendant timely objects to an actual conflict of interest.  435 U.S. at 488.  In that case,

the defendant's counsel repeatedly objected to the joint representation of three co-

defendants, based on the co-defendants' conflicting interests.  Id. at 478.  The trial court

refused to appoint separate counsel and prohibited the defendant's counsel from cross-

examining the co-defendants.  Id. at 478-79.  The Court reversed the defendant's

conviction, holding that the trial court's failure "to appoint separate counsel or to take

adequate steps to ascertain whether the risk [of a conflict of interest] was too remote to

warrant separate counsel . . .  in the face of the representations made by counsel weeks

before trial and again before the jury was empaneled, deprived [the defendant] of the

guarantee of 'assistance of counsel.'"  Id. at 484.

As the Supreme Court subsequently clarified in Mickens, the rule of automatic

reversal articulated in Holloway is exceedingly narrow: "Holloway . . . creates an

automatic reversal rule only where defense counsel is forced to represent codefendants

over his timely objection, unless the trial court has determined that there is no conflict."

Mickens, 535 U.S. at 168; but see United States v. Cook, 45 F.3d 388, 393 (10th Cir.

1995) (noting that "[a]lthough Holloway was a multiple representation case, the district

court's duty of inquiry arises whenever there is the possibility that a criminal defendant's

attorney suffers from any sort of conflict of interest") (internal quotation marks and

citation omitted).  Even where the trial court knew or should have known that defendant's

counsel was actively representing conflicting interests and the trial court fails to fulfill its

obligation to make a sufficient inquiry into the matter, reversal of the defendant's

conviction is not warranted unless the defendant demonstrates that the conflict actually

"*affected counsel's performance*–as opposed to a mere theoretical division of loyalties."

Mickens, 535 U.S. at 171 (emphasis in original); see id. at 173 (noting that "[t]he trial

court's awareness of a potential conflict neither renders it more likely that counsel's

performance was significantly affected nor in any other way renders the verdict

unreliable").  Stated simply, the trial court's failure to make the required inquiry does not

"reduce [the defendant's] burden of proof; it [is] at least necessary, to void [a] conviction,

for [the defendant] to establish that the conflict of interest adversely affected his counsel's

performance." Id. at 173-74.

Defendant did not object to Mr. Harris' representation at the second trial.  In the

absence of a timely objection by Defendant, the automatic rule of reversal in Holloway is

inapplicable.  See Mickens, 535 U.S. at 170-71 (noting that Holloway's automatic rule of

reversal did not apply to the defendant in Wood v. Georgia, 450 U.S. 261, 273 (1981), a

case in which the government "raised the conflict problem and requested the court look

into it"); Gardner v. Galetka, 568 F.3d 862, 887 (10th Cir. 2009) ("Even assuming the

trial court knew or reasonably should have known about the existence of the conflict,

however, Mr. Gardner still would have to show that the conflict of interest 'adversely

affected his counsel's performance' in order to obtain habeas relief.") (quoting Mickens,

535 U.S. at 174); see also United States v. Collins, 434 Fed. Appx. 434, 441 (6th Cir.

2011) ("Collins did not just fail to object to having Ranke as her counsel; she

affirmatively fought the government's motion to disqualify her attorney.  Accordingly,

we find that the Holloway automatic-reversal rule does not apply here.") (unpublished

opinion).

The nature of Mr. Harris' conflict of interest is pertinent to the Sixth Amendment

inquiry.[1]  Mr. Harris labored under a personal conflict of interest, imputed to him by

---

[1]In Mickens, the Supreme Court questioned whether the presumption of prejudice applicable to actual conflicts of interest applies to attorney ethical conflicts other than joint representation.  See Mickens, 535 U.S. at 174-75 (noting that "[n]ot all attorney conflicts present comparable difficulties"); Montoya v. Lytle, 53 Fed.Appx. 496, 498 (10th Cir. 2002) (noting that the Supreme Court "has never extended the Cuyler standard to cases involving successive, rather than multiple, representation") (unpublished opinion); see also Beets v. Scott, 65 F.3d 1258, 1265 (5th Cir. 1995) (holding that "Strickland offers a superior framework for addressing attorney conflicts outside the multiple or serial client context.").  For purposes of the present motion for entry of judgement, the Court assumes, without deciding, that the presumption of prejudice applies to personal conflicts of interest and that Defendant is not required to prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

virtue of his association with Mrs. Caroland. [See Doc. 229 at 13-14]  An imputed

conflict of interest in violation of the New Mexico Rules of Professional Conduct,

standing alone, is insufficient to establish a Sixth Amendment violation.  See United

States v. McCullah, 76 F.3d 1087, 1099 (10th Cir. 1996) (holding that an imputed conflict

of interest was insufficient to establish a Sixth Amendment violation because the

defendant had "failed to demonstrate an actual conflict on the part of his counsel, nor has

he adequately shown any adverse effects"); United States v. Gallegos, 39 F.3d 276, 279

(10th Cir. 1994) (holding that an imputed conflict of interest, in violation of the New

Mexico Rules of Professional Conduct, "will not in itself constitute a constitutional

violation under Cuyler and related cases. These require that an 'actual' conflict must be

established"); see also Mickens, 535 U.S. at 176 ("The purpose of our Holloway and

Sullivan exceptions from the ordinary requirements of Strickland . . . is not to enforce the

Canons of Legal Ethics, but to apply needed prophylaxis in situations where Strickland

itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment

right to counsel.").  "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of

interest that adversely affects counsel's performance."  Mickens, 535 U.S. at 172 n.5.

Thus, to prevail on her motion for a new trial, Defendant must prove that Mr. Harris was

laboring under an actual conflict of interest that adversely affected his performance.

     Defendant argues, however, that she is entitled to a new trial on the pleadings

---

would have been different."  Strickland, 466 U.S. at 694.

because she did not, and indeed could not, validly waive the Caroland conflict as a matter of law. [Doc. 256 at 10-11]  However, Defendant's argument presumes the existence of a Sixth Amendment violation.  Unless and until Defendant demonstrates that an actual conflict of interest adversely affected Mr. Harris' performance in violation of the Sixth Amendment, the Court need not address the issue of whether the constitutional violation validly was waived.  See id. at 175 ("[U]ntil . . . a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance") (internal quotation marks and citation omitted) (emphasis in original).

"'[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is' entitled to a new trial, 'it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.'"  United States v. Velarde, 485 F.3d 553, 560 (10th Cir. 2007) (quoting Harrris v. Nelson, 394 U.S. 286, 299 (1969)).  Defendant has proffered that Mr. Harris misrepresented the actions he took to ensure a firewall around Mrs. Caroland.  The Court will afford Defendant an opportunity to develop her evidence by conducting discovery.  See id. (discussing defendant's right to discovery in support of a motion for new trial).  Of course, Defendant may elect to rest on the exhibits submitted in support of her motion for a new trial.  [See Doc. 172]  Defendant must inform the Court in writing, by notice to the Court's proposed text box and with copy to the Government, on or before July 17, 2012, whether she intends to do so.  If Defendant elects to pursue discovery, the

Court will establish a discovery schedule and hearing date by separate order.

## III.    CONCLUSION

For the foregoing reasons, the Court concludes that Defendant bears the burden to prove that Mr. Harris labored under an actual conflict of interest that adversely affected his performance.

**IT IS THEREFORE HEREBY ORDERED** that *Dr. Green's Motion for Entry of Judgment as to her Motion for New Trial Based on the "Caroland Conflict"* [Doc. 256] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that on or before July 17, 2012 Defendant shall advise the Court and the United States by notice filed in the record whether she intends to rest on the record as it now stands.

**SO ORDERED** this 9th day of July, 2012 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE