IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                   CR 09-0311 WJ/WPL

PATRICIA JOSEPHINE GREEN, M.D.,

    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO OBTAIN TESTIMONY FROM AN ASSISTANT UNITED STATES ATTORNEY
and
GRANTING DEFENDANT'S MOTION PROBHITING GOVERNMENT FROM COMMUNICATING WITH FORMER DEFENSE COUNSEL**

This matter comes before the Court on two motions raised by Defendant Patricia Green, M.D., during a status conference held on August 24, 2012, before the Honorable William P. Lynch.[1] (Doc. 277.) At the status conference, Green asked for an order permitting her to obtain testimony from Assistant United States Attorneys ("AUSAs") regarding their knowledge of the firewall at issue in the alleged Caroland conflict and a separate order prohibiting the United States from interviewing or speaking with former counsel for the defense, as well as Monica Caroland, outside of the presence of a judge and current defense counsel. (*Id*.; Doc. 278.) Judge Lynch instructed Green to submit a brief on these two issues.[2] (Doc. 277; Doc. 278.) On September 6, 2012, Green filed a motion to clarify the order and then vaguely addressed these

---

[1] Green repeatedly refers to Judge Lynch as "the Magistrate Court." (*See* Doc. 281.) There is no separate Magistrate Court. This case has, at all times, remained in the United States District Court for the District of New Mexico.

[2] The order requests briefing on whether Green may depose AUSA Joel Meyers. However, after reviewing the recording of the status conference, the Court realizes that Green did ask to depose the AUSAs, and not just Meyers.

issues she had raised during the status conference. (Doc. 281.) The United States filed a response in opposition, requesting that the Court either deny Green's motion entirely or order her to file supplemental briefing. (Doc. 287.) Green filed a reply attacking the validity of the United States' objections. (Doc. 291.) Having considered the facts and relevant law, the Court grants in part and denies in part Green's motion.

Green first asks for leave to obtain testimony from the AUSAs involved in the prosecution regarding their knowledge, if any, of the firewall at issue in the Caroland conflict. (Doc. 277; Doc. 281 at 8.) Green's discussion of this issue is contradictory and is based on a misunderstanding of statements by AUSA Joel Meyers at the August 24, 2012 status conference. Despite her request during the conference, Green's brief withdraws her motion to obtain testimony from the AUSAs on the basis that AUSA Meyers consented to her request, subject to the *Touhy* regulations.[3] (Doc. 281 at 9 ("[T]he Defendant, based on the statement of AUSA Meyers at the status conference on August 24, 2012, understands that the United States is claiming the *Touhy* regulations apply as to obtaining testimony of the AUSAs, and that the government will object to any efforts outside those regulations to secure the AUSA testimony.").) Green then raises four legal issues that accompany the use of an AUSA as a witness under the *Touhy* regulations, but her brief fails to address or make arguments concerning any of these issues. (*Id.*)

The United States' response does not address the merits of deposing or calling an AUSA to testify in the evidentiary hearing; rather, it only notes that Green "[asked] the very questions her brief was ordered to address." (Doc. 287 at 3.) In reply, Green concedes that she did

---

[3] Neither the United states nor Green cites the case containing the *Touhy* regulations, but I presume they mean the limitations set forth in *United States ex rel. Touhy v. Ragen*, 240 U.S. 462 (1951), and subsequent case law.

withdraw the request for an order, clarifying that her brief "instead suggested briefing would be limited if the parties proceed in reliance on AUSA Meyer's assertion that the Touhy [sic] regulations apply to demands for testimony from United States Attorneys." (Doc. 291 at 6.)

However, a close review of the recording from the August 24, 2012 status conference reveals that AUSA Meyers did not acquiesce to Green's request to obtain testimony from the AUSAs.[4] In fact, Judge Lynch asked AUSA Meyers, "[Defense] counsel has said that they would like to take your deposition. What's your position on that?" (LCR at 10:19:20.) AUSA Meyers responded, "One, I don't think that it's appropriate. Two, there are what's known as the *Touhy* regulations that govern the subpoenaing or taking testimony from any government employees pursuant to their employment, and certainly prior to any of that those *Touhy* regulations would have to be strictly followed." (LCR at 10:19:26 a.m.) While AUSA Meyers did raise the *Touhy* regulations at the status conference, he did it only to argue that *if* the Court permitted depositions or testimony, the regulations would need to be followed. He did not concede the motion in any way. That is precisely why Judge Lynch proceeded to order briefing on this topic. Green's reliance on AUSA Meyer's statement is entirely misplaced.

Returning to the order for briefing, the Court instructed Green to brief this issue. In her brief, Green withdrew the motion. Accordingly, the Court denies her request and prohibits Green from seeking testimony from the AUSAs.

Moving to the second issue, Green has asked for an order prohibiting the United States from communicating with any former defense counsel, as well as Mrs. Caroland, outside of the presence of a judge and current defense counsel. (Doc. 278.) Green bases her request on the recommendation by the American Bar Association ("ABA") in Formal Opinion 10-456 ("ABA

---

[4] The August 24, 2012 status conference was recorded on the Liberty Court Recorder, LC-Organ 20120824_095257.drc. All citations to this audio file will be abbreviated to "LCR." There is no transcript of this proceeding.

Opinion"). (Doc. 281 at 10-11; Doc. 281 Ex. B.) The ABA Opinion addresses whether "a criminal defense lawyer whose former client claims that the lawyer provided constitutionally ineffective assistance of counsel may, without the former client's informed consent, disclose confidential information to government lawyers prior to any proceeding on the defendant's claim." ABA Comm. On Ethics & Prof'l Responsibility, Formal Op. 10-456, 1 (2010). The United States failed to respond to this argument in its response brief, thus waiving the issue.

However, since an ABA Formal Opinion is not binding on this Court, and since adopting the ABA's approach would require increased judicial oversight in this case, the Court declines to adopt the ABA Opinion merely because the United States failed to address the issue. Having independently considered the legal merits of the ABA Opinion, the Court finds it persuasive. Although the ABA Opinion interprets the application of the Model Rules of Professional Conduct in a proceeding for ineffective assistance of counsel, there are significant legal and factual similarities that justify its application in the present matter. Furthermore, the ABA's reasoning is sound, and the procedures outlined in the ABA Opinion echo concerns articulated in this Court's ethical rules. Accordingly, the Court grants Greens' motion to adopt the procedures outlined in the ABA Opinion.

As a foundational matter, the Rules of Professional Conduct adopted by the Supreme Court of New Mexico apply to all attorneys practicing in the United States District Court for the District of New Mexico. *See* D.N.M.LR-Civ. 83.9. The relevant rules governing confidentiality and duties to former clients in New Mexico are virtually identical to the ABA's Model Rules of Professional Conduct. *Compare* N.M. R. Prof'l Conduct 16-106 & 16-109 (2012), *with* Model Rules of Prof'l Conduct R. 1.6 & 1.9. Thus, while the ABA Opinion facially discusses a set of ethical rules which are not followed in this jurisdiction, the Model Rules are

functionally the same as the New Mexico Rules, and they do not present a barrier to adopting the ABA's approach.

The other potential obstacle to adopting the ABA Opinion lies in its subject matter. The ABA Opinion discusses the proper procedure for obtaining the testimony of a former defense counsel after a criminal defendant raises a claim of ineffective assistance of counsel. *See* Formal Op. 10-456 at 1. However, the issue here is whether Green is entitled to a new trial pursuant to Federal Rule of Criminal Procedure 33. (Doc. 172; Doc. 264.) The substance of Green's motion focuses on the conduct of her former defense counsel, Randall Harris. Green alleges that Harris labored under a conflict of interest stemming from the marriage of his associate, Mrs. Caroland, to Agent Phil Caroland, a witness for the prosecution. Specifically, Green challenges the sufficiency of the firewall in Harris's office to screen Mrs. Caroland off of the case. While a motion for a new trial is procedurally and legally distinct from a claim of ineffective assistance of counsel, the same core concerns addressed in the ABA Opinion are present here. In both the ABA's hypothetical discussion and in this case, the former attorney is not directly involved in the litigation, but his conduct will directly impact the Court's findings. As will be discussed below, the ABA Opinion also expressly considers the potential for former attorney testimony to prejudice a new trial, which is of concern here since a new trial is the subject of the present motion.

However, the similarities in the law and the factual underpinnings are not the only reasons for adopting the ABA Opinion; the court will adopt the ABA Opinion because it correctly considers the duties of an attorney to a former client when the former client has challenged his or her competency or professionalism. The ABA Opinion starts with the well-settled principle that a lawyer must maintain the confidentiality of information regarding the

representation of clients and former clients unless the client gives the attorney informed consent to disclose the information. *See* Formal Op. 10-456 at 1 (citing MODEL RULES OF PROF'L CONDUCT R. 1.6 & 1.9(c)). This rule applies to all information, even non-privileged communications that would otherwise be relevant to the legal claim. *Id*. at 2. However, the ABA Opinion notes that while a former client might consent to his or her prior counsel testifying in a judicial proceeding, he may also opt not to consent to his counsel speaking with the prosecution prior to those proceedings. *Id* at 2-3. Given the nature of Green's motion, the Court presumes that she will not consent to any of her former attorneys speaking with the prosecution outside of the presence of a judge.

There are exceptions to an attorney's right to communicate client information without consent, such as the self-defense exception. N.M. R. PROF'L CONDUCT 16-106(b)(5); MODEL RULES OF PROF'L CONDUCT R. 1.6(b)(5). The ABA concluded that the self-defense exception does not apply to extra-judicial communications between a prosecutor and a former defense attorney when the defendant has challenged the adequacy of the representation provided by the former attorney. Formal Op. 10-456 at 3. The ABA came to this conclusion despite the fact that the Model Rule establishing this exception permits the disclosure of information in order "to respond to allegations in any proceeding concerning the lawyer's representation of the client." MODEL RULES OF PROF'L CONDUCT R. 1.6(b)(5); *see also* N.M. R. PROF'L CONDUCT 16-106(b)(5) (same). While this provision, on its face, appears as if it would apply to a claim of ineffective assistance of counsel or any claim calling a lawyer's assistance into question, the ABA explains that in order to disclose information, the attorney must first believe that it is reasonably necessary to do so. Formal Op. 10-456 at 4 (citing MODEL RULES OF PROF'L CONDUCT R. 1.6 cmts. 10 & 14). The Official Comments to the New Mexico Rules are similar to

the Model Rules, as they also clarify that when a lawyer discloses confidential information under the self-defense exception, "the lawyer may respond to the extent that the lawyer reasonably believes necessary to establish a defense." N.M. R. PROF'L CONDUCT 16-106 cmts. 12, 16.

The ABA Opinion concludes that only a court-supervised proceeding can ensure that any disclosure by a former attorney is limited to this narrow exception of necessity. *Id*. The ABA explains,

> Because the extent of the trial counsel's disclosure to the prosecution would be unsupervised by the court, there would be a risk that trial counsel would disclose information that could not ultimately be disclosed in the adjudicative proceeding. Disclosure of such information might prejudice the defendant in the event of a retrial.

*Id*. at 5. Furthermore, the ABA Opinion elaborates on why it is unlikely that a former attorney would effectively police his or her own statements to the prosecution to ensure that only necessary information be disclosed:

> A lawyer may be concerned that without an appropriate factual presentation to the government as it prepares for trial, the presentation to the court may be inadequate and result in a finding in the defendant's favor. Such a finding may impair the lawyer's reputation or have other adverse, collateral consequences for the lawyer.

*Id*.

The ABA's argument is a logical interpretation of the Model Rules, and it provides realistic insight into the potential motives of attorneys in this situation. The comments to the New Mexico Rules likewise contain a similar desire to safeguard against disclosures which might later prejudice the defendant. With respect to permitted disclosures,

> If the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.

*See* N.M. R. PROF'L CONDUCT 16-106 cmt. 16. While this comment does not explicitly question the motivations of a former attorney testifying in proceedings challenging his or her representation, it clearly contemplates that extra caution should be used whenever an attorney is asked to disclose any information about a former client. Given this language, it appears as if the New Mexico Rules encourage the safeguards created by the ABA Opinion. Therefore, the Court prohibits the United States from interviewing or communicating with any of Green's former attorneys, as well as Mrs. Caroland, outside of the supervision of a judge and Green's present counsel.

The Court turns lastly to the one of the issues of clarification raised in Green's motion.[5] Green argues that Judge Lynch failed to properly address the scope of the evidentiary hearing. (Doc. 281 at 4.) He did not fail to address it – he explicitly refused to do so. The clerk's minutes are not a verbatim recitation of the status conference, so below is a reproduction of the recorded conversation for the parties' benefit:

Defense counsel: " . . . if you are able to tell us at this time if you believe the affidavits are going to be admissible evidence. And if there are any particular witnesses that you believe that you need to hear from since you have taken some time to go through the record and if you think there is anybody that we haven't mentioned that you believe needs to be included in the list" (LCR at 10:12:35 a.m.)

. . .

---

[5] Defense counsel raised a number of issues in her motion which fall entirely outside the scope of the briefing order. (*See* Doc. 264; Doc. 281 at 2, 4, 7.) I will not entertain these issues.

| | |
|---|---|
| Court: | "I am not in the position of giving advisory opinions. I am not going to tell you who you might want to present evidence from." (LCR at 10:13:12 a.m.) |

The Court suggests that defense counsel review the Federal Rules of Evidence in preparing for the hearing. If Green presents objectionable evidence, the United States may object, and only then will the Court rule on admissibility.

    IT IS SO ORDERED.

                                        _____
                                        William P. Johnson
                                        United States District Judge