IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                          No. 09-CR-0311 WJ/WPL

PATRICIA JOSEPHINE GREEN, M.D.,

    Defendant.

### MEMORANDUM OPINION AND ORDER
### ON DEFENSE COUNSELS' CJA VOUCHERS[1]

**THIS MATTER** comes before the Court on the requests for attorneys' fees submitted by defense counsel Jody Neal-Post and Judith Rosenstein pursuant to the Criminal Justice Act, 18 U.S.C.A. § 3006A, ("CJA"). From October 15, 2012 through March 11, 2013 when the case was concluded, Attorney Rosenstein seeks CJA compensation in the total amount of $19,665.29 and Attorney Neal-Post seeks CJA compensation in the total amount of $31,425.86. On September 17, 2013, the Court conducted a hearing on the attorney fee requests pursuant to the Sealed Ex Parte Order and Notice of Hearing (doc. 42) which identified the following five areas of inquiry:

> 1. Whether this case was truly complex or became complex because of the actions of defense counsel.
> 2. Whether the time devoted to this case by Defense Attorneys Rosenstein and Neal-Post was excessive.
> 3. Whether the number of pleadings filed by Attorneys Rosenstein and Neal-Post was excessive.
> 4. Whether Attorneys Rosenstein and Neal-Post acted professionally towards court officials as required by Local Rule 57.2 and the Creed of Professionalism of the New Mexico Bench and Bar.

---

[1] This Memorandum Opinion and Order was initially filed ex parte and under seal (doc. 404) because the CJA vouchers were submitted ex parte and under seal. However, by order filed as doc. 409, the Sealed Exparte Memorandum Opinion and Order was withdrawn and this Memorandum Opinion and Order was filed as a public document.

      5. Whether pro bono Attorney Jeff Rein should be receiving CJA compensation based on what the Court perceived to be Attorney Rein assuming a lead counsel role particularly at the plea and sentencing hearing for the Defendant.

Going in reverse order, after hearing remarks from Attorney Rein who was part of the defense team but was working on a pro bono basis, I am satisfied that all three attorneys who represented the Defendant in connection with the sentencing issues had different roles in terms of how they represented the Defendant and so I have no additional concerns on item number 5. While there is no question that Attorney Rein played a significant role in representing the Defendant, since he undertook this representation on a pro bono basis, I am not factoring his time into the analysis on defense counsel Rosenstein's and Neal-Post's CJA applications.

As for the issue raised in item number 4 concerning professionalism, I have no concerns on this issue regarding Attorney Neal-Post's conduct in this case.  However, I had previously expressed my concerns about what I considered to be a lack of professionalism on the part of Attorney Rosenstein in certain instances when she interacted with certain members of the U.S. Probation Office and members of my staff.  Attorney Rosenstein apologized both in writing and orally at the hearing.  Additionally, Attorney Rosenstein represented that she was retiring and this case was her last CJA case so I see no need to take any further action on this issue.

As for item number 1 concerning the complex nature of the case, I raised the question in the notice of whether the case was complex because of the legal and factual issues in dispute or did the case become complex because of the actions taken by defense counsel.  Attorney Neal-Post made an excellent oral presentation at the hearing and I do agree that there were some unique circumstances in this case that weigh in favor of counsel's suggestion that the case was legally and factually complex.  While I am not convinced that the case was as complex as defense counsel suggest, my concerns are best addressed in items numbered 2 and 3 in the

Notice of Hearing which I have combined into the single issue of whether the total requested CJA compensation by both Attorneys Rosenstein and Neal-Post in the combined total amount of $51,091.15 is excessive.  As explained in further detail below, I find that portions of the requested amounts are excessive due in large part to unnecessary duplication of efforts by Attorneys Rosenstein and Neal-Post.

## Background

Defendant Patricia Josephine Green is a medical doctor licensed to practice medicine in New Mexico.  The allegations which gave rise to the Indictment (doc. 2) and Superseding Indictment (doc. 73) occurred in Roosevelt County.  On February 10, 2009, Defendant was indicted on a single count of distribution of methadone outside the course of professional practice and not for a legitimate medical purpose in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C).  At the time, she was represented by retained counsel, attorneys Gary Mitchell and Randall Harris.  Additionally, when the Defendant was indicted, her case was randomly assigned to Chief U.S. District Judge M. Christina Armijo and she served as the presiding judge in this case until she recused herself in September of 2012 and the case was then randomly assigned to me.

On July 28, 2010, the case proceeded to trial by jury on the single count in the Indictment.  The jury was unable to reach a verdict and so Judge Armijo declared a mistrial by order dated July 30, 2010 (doc. 57).  Subsequently, an attempt was made to resolve the case but the parties could not come to an agreement so Attorney Gary Mitchell withdrew from representing Defendant.

On November 10, 2010, the grand jury returned the Superseding Indictment which added an additional charge, as count 1, of distribution of methadone outside the course of professional

practice and not for a legitimate medical purpose resulting in the death of a former patient, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Count 2 of the Superseding Indictment consisted of the original charge on which the jury in the first trial deadlocked.  Count 1 of the Superseding Indictment, or what has been commonly referred to as the "death count," was the more serious charge that carried a twenty year statutory minimum sentence upon conviction.  *See United States v. MacKay,* 715 F.3d 807, 844-46 (10th Cir. 2013).

Attorney Randall Harris continued to represent Defendant although the record reflects that he did file a motion to withdraw (doc. 107).  However, there was a court order entered stating that the motion to withdraw was deemed to have been withdrawn (doc. 108).  In any event, Defendant proceeded to trial a second time with Randall Harris as lead defense counsel assisted by Attorney Kirk Chavez.  This time the jury reached a unanimous verdict: not guilty on count 1 (the death count) and guilty on count 2.  While a Judgment of Acquittal was entered on the death count (doc. 157), Defendant was remanded into custody based on the guilty verdict as to Count 2 (doc. 137).  Defendant ended up serving almost nine months in detention and then Judge Armijo authorized Defendant to be released on new conditions of release (doc. 231).

After Defendant was remanded into custody, Attorneys Rosenstein and Neal-Post entered their appearance on behalf of Defendant (doc. 161) and Attorneys Harris and Chavez withdrew.  Attorneys Rosenstein and Neal-Post promptly filed a Motion for New Trial (doc. 172) on the theory that Defendant's Sixth Amendment right to counsel had been violated because her former counsel Randall Harris was ineffective based on what was alleged to be a conflict of interest.  Specifically, the Government's case agent is the husband of an attorney who practiced law in the same firm as defense attorney Randall Harris.  Thus, under Defendant's theory, Randall Harris had a conflict of interest such that he was ineffective, thereby violating Defendant's Sixth

4

Amendment right to effective, conflict-free counsel. There were several obstacles in the way of Defendant in terms of being able to prevail on her motion for new trial. First, the record is clear that the relationship between the case agent and the attorney working in Randall Harris' office was disclosed to the Defendant. Second, this conflict issue was brought to the attention of Judge Armijo and she determined, after hearing from Defendant, that Randall Harris was Defendant's counsel of choice. While Defendant argued in her motion for new trial that her waiver was not informed, she nevertheless was confronted with the problematic task of establishing ineffective assistance of counsel that was prejudicial to her when Randall Harris was successful in obtaining a not guilty verdict on the death count which, upon conviction, would have required Defendant to serve a statutory minimum twenty year sentence. Stated another way, Defendant was in the difficult position of arguing Randall Harris was ineffective as counsel with the guilty verdict on Count 2 when he was obviously extremely effective as defense counsel with the not guilty verdict on Count 1.

By ex parte letter dated February 17, 2012 (doc. 233), Attorney Rosenstein wrote to Judge Armijo requesting CJA appointment of Attorneys Rosenstein and Neal-Post as counsel for Defendant based on Defendant's indigent status. Attorney Rosenstein disclosed that Defendant had paid defense counsel $15,000 ($5,000 to Ms. Rosenstein, $8,000 to Ms. Neal-Post and $2,000 to a paralegal) but with Defendant's incarceration, she was out of funds and the scope of representation had become much more involved than what was originally anticipated when defense counsel agreed to represent Defendant. Judge Armijo responded by denying the request for Attorneys Rosenstein and Neal-Post to be appointed CJA counsel; however, Judge Armijo did appoint Assistant Federal Public Defender Benjamin Gonzales as counsel for Defendant. Through statements made at different hearings since I was assigned this case, defense counsel

attribute some kind of improper conduct on the part of Judge Armijo in denying their request to be appointed CJA counsel and in specifically appointing Mr. Gonzales to represent Defendant. As I stated at the hearing and as I restate in this opinion, such notions are totally unfounded. I am in complete agreement with Judge Armijo's initial decision to decline defense counsels' request to be appointed as CJA counsel. Like Judge Armijo, I rarely allow privately retained counsel to become CJA counsel when a defendant can no longer pay his or her attorney bills or when the defense attorney has exhausted the retainer. Otherwise, privately retained attorneys will burn through retainers and then seek CJA compensation to finish their cases. Such a practice would further stretch limited CJA resources and besides, privately retained lawyers should not receive a financial bailout from the CJA fund when they make bad business decisions in terms of grossly underestimating the time involved in representing particular clients. Moreover, the CJA was enacted by Congress not for the purpose of compensating attorneys, but "…to insure effective representation for those charged with a crime or confronted with the risk or being deprived of constitutional rights in ancillary proceedings." *United States v. Gonzales,* 150 F.3d 1246, 1263 (10th Cir. 1998).

I also take strong exception to defense counsels' suggestion that Judge Armijo acted improperly in specifically appointing Mr. Gonzales from the Federal Defender's office to represent the Defendant. In cases where there have been multiple defense attorneys representing the same defendant and there is a need to bring the case to resolution, like Judge Armijo I too have appointed specific attorneys to represent specific defendants and the attorneys I have appointed in these situations were selected because they were exceptionally well qualified to represent the specific defendant or defendants who needed representation. Notwithstanding Mr. Gonzales' exceptional qualifications as a criminal defense lawyer, Defendant wanted Attorneys

Rosenstein, Neal-Post and Rein to continue to represent her which was confirmed in the pleading entitled "Dr. Green's Response in Opposition to the Assistant Federal Defender's Motion for Hearing Regarding Representation…" wherein defense counsel stated:  **"Counsel Rosenstein, Neal-Post and Rein, are the Defendant's counsel of choice, who are 'willing to represent the defendant even though she is without funds' to pay them."** (Doc. 241 at p. 6).

When I became the presiding judge in this case, I decided to take defense counsel at their word and allow them to continue to represent Defendant even though she was without funds to pay them.  However, I reconsidered my decision and granted the request of Attorneys Rosenstein and Neal-Post to be appointed CJA counsel with October 15, 2012 as the effective date of the CJA appointment.  Defense counsel were advised that I would not entertain any requests for compensation prior to the October 15, 2012 CJA effective date.  My reasons for not allowing any CJA compensation prior to October 15, 2012 are the same reasons discussed above in connection with Judge Armijo's initial denial of defense counsels' request to be appointed CJA counsel.

Additionally, considering that I had inherited a case where the Defendant had gone to trial on two separate occasions before a different presiding judge and where there was a need to bring the case to final resolution, I reconsidered and appointed Attorneys Rosenstein and Neal-Post as CJA counsel for reasons that were best articulated in Ms. Rosenstein's February 17, 2012 letter (doc. 233):

> Consequently Ms. Neal-Post and I are respectfully requesting CJA appointment to Dr. Green's case, as research and writing specialist and lead counsel respectively. We know the case factually and legally, have established relationships with the defendant, the parties and most potential witnesses for the upcoming evidentiary hearing on the New Trial Motion.  Said hearing will entail the examination and cross examination of numerous witnesses, including several attorneys.  The most cost effective and constitutionally adequate representation would be provided by our appointment as co-counsel henceforth, due to the complexity of the issues and pleadings and the unique procedural case posture.

Hindsight being 20/20, I am in general agreement with all of the quoted statement except for the assertion that having both Attorneys Rosenstein and Neal-Post as CJA counsel would be a cost effective way to resolve the case.  It was not and that was due in large part to what I consider to be unnecessary duplication of work by Attorneys Rosenstein and Neal-Post which resulted in excessive billing and excessive hours spent representing the Defendant.  I never had to rule on whether Defendant's Sixth Amendment right to effective, conflict-free counsel was violated because the parties by agreement appeared before retired U.S. District Judge Bruce Black and hammered out a plea agreement whereby Defendant's felony conviction on Count 2 was vacated and she then pled guilty to a misdemeanor and received a time served sentence with one year of unsupervised probation.

Ms. Rosenstein initially requested CJA compensation for 5.2 hours of in court services, 151.7 hours of out of court services, $124.28 for travel expenses, and $312.25 for other expenses for a total request of $20,049.03.  A court financial specialist reviewed Ms. Rosenstein's request and removed any compensation specifically excluded under CJA and corrected any mathematical errors.  This left Ms. Rosenstein's CJA request for 5.2 hours of in court services, 148.6 hours of out of court services, $128.04 for travel expenses, and $312.25 for other expenses for a total request of $19,665.29.

Ms. Neal-Post requested CJA compensation for 3.6 hours of in court services, 163.4 hours of out of court services and $382.39 for travel expenses for a total request of $20,425.00.  A court financial specialist reviewed Ms. Neal-Post's request and removed any compensation specifically excluded under CJA and corrected any mathematical errors.  This left Ms. Neal-Post's CJA request for 5.2 hours of in court services, 243.7 hours of out of court services and $313.36 for travel expenses for a total request of $31,425.86.

**Discussion**

I.   **Legal Standard**

The CJA authorizes compensation for time "reasonably expended" and expenses "reasonably incurred." 18 U.S.C. § 3006A(d)(1). Attorney time actually expended does not necessarily equate to attorney time reasonably expended. *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir. 1983) *disapproved on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711 (1987). Moreover, in determining the total amount of reasonable time and expense, it is necessary to keep in mind that appointments under the CJA "are to protect the rights of the indigent accused, and they are neither to be sought nor made for the purpose of providing income to attorneys. *United States v. Self, 818 F. Supp. 1442, 1446 (D. Utah 1992).* Indeed, acceptance of a CJA appointment is equivalent to agreeing to perform a public service. *Id. See also United States v. Cook,* 628 F.Supp. 38, 41 (D.Colo.1985) (citations omitted).

"Presence of multiple counsel at hearings and court proceedings often is duplicative and unnecessary." *See Self,* 818 *F. Supp.* at 1445. "[I]f three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.' ... The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services." *Ramos,* 713 F.2d at 554 (citations omitted). Excessive review of documents, court pleadings and the work of other counsel is indicative of a lack of coordination among counsel or an unnecessary duplication of effort for which CJA attorneys ought not be compensated. *Self, 818 F. Supp.* At 1445.

II.   **Attorney's Fees Not Allowed By The Court:**

    **A. Motion to Correct the Record Pursuant to Fed. R. Crim. P. 36 (Doc. No. 371)**

Document number 369 in this case was the order for the parties to attend a mediation or settlement conference before Judge Black. The parties had communicated their desire to try to mediate a resolution of this case and agreed to Judge Black serving as the mediator. While on a plane returning to Albuquerque, I hand wrote an order for the mediation conference and when the order was typed, Attorney Neal-Post's name was incorrectly typed as "Jay Post Neal" instead of Jody Neal-Post. When I proofread the order, the typographical error was not caught before the order was electronically filed. Since the order was filed under seal, it was not accessible as a public document so counsel of record were the only persons who received a copy of this order. Defense counsel contacted Court staff by email and by telephone requesting the order be redone and refiled to correct the error. When defense counsel learned that I was not going to waste time and resources correcting an insignificant typographical error in a sealed order, defense counsel proceeded to file as a public document the pleading entitled "Dr. Green's Motion to Correct Record Pursuant to Fed. R. Crim. P. 36" (doc. 371). In their motion, Ms. Rosenstein and Ms. Neal-Post made a number of assertions regarding the importance of an accurate public record of criminal proceedings in spite of the fact that the error in Ms. Neal-Post's name occurred in a *sealed* order. Defense counsels' argument that the accuracy of court pleadings is of utmost importance rings all the more hollow considering that defense counsel themselves made a typographical error concerning the docket number of a previously filed document in the very pleading they had filed demanding that I change the incorrect spelling of Ms. Neal-Post's name. Further, Ms. Neal-Post conceded at the hearing that anyone involved in the case who needed to rely on the sealed order would have been able to discern who were the counsel of record in the case.

I made my opinion on Defendant's Motion to Correct known during the hearing held on September 17, 2013. As I stated at the hearing in no uncertain terms, this motion was petty and I was not the least bit interested in wasting time and staff resources correcting what was a simple and insignificant typographical error in a sealed order that went to no one other than counsel of record. Now, defense counsel seek U.S. taxpayer dollars in the form of CJA compensation for the preparation and filing of this frivolous motion. I have no difficulty in finding that the time billed by Attorneys Rosenstein and Neal-Post on this motion to correct the record was not time reasonably expended in protecting the rights of the indigent Defendant. Moreover, at a time when federal public defenders, probation officers and court employees are facing unpaid furloughs and/or layoffs and CJA hourly rates are being reduced nationwide, I refuse to waste CJA funds by compensating attorneys for frivolous use of time[2]. Accordingly, the following attorney billing entries are disallowed:

Ms. Neal-Post

| Date | Description | Time |
|---|---|---|
| 01/14/2013 | T/C regarding errors Doc 369 and how to correct | .3 |
| 01/15/2013 | Notice to co-counsel that court minutes are wrong | .1 |
| 01/15/2013 | Review of co-counsel requests to court for corrections of names in official documents | .1 |
| 01/16/2013 | Court response-will not correct counsel's names or its other errors; response to court/ discussion w/ Rosenstein | .3 |
| 01/17/2013 | Request to USA for position on motion to correct and notice that the court, NOT defense, | .1 |

---

[2] I note that even if the Motion to Correct had been warranted, the amount of time devoted to correcting the error in the court order was excessive.

11

| | is responding ex parte | |
|---|---|---|
| 01/17/2013 | Drafting mot to correct record & filing | 1.8 |
| 01/17/2013 | AUSA Ganjei email response that gov doesn't care if record is accurate and takes no position | .1 |
| | | **TOTAL: 2.8 hrs.** |

Ms. Rosenstein

| Date | Description | Time |
|---|---|---|
| 01/14/2013 | Tel conf with JNP re errors in Doc 369 and how to fix | .3 |
| 01/15/2013 | e-mail discussion with co-counsel about errors in Doc 370 and how to deal with same | .3 |
| 01/15/2013 | e-mail CRD regarding errors in documents | .1 |
| 01/16/2013 | Review CRD response to errors in Docs- forward to co-counsel | .1 |
| 01/16/2013 | TC CRD re: errors and need to correct same in official docs | .1 |
| 01/17/2013 | TC CRD re: record errors- told to file motion- advise co-counsel of need to file motion | .2 |
| 01/17/2013 | Review/edit motion to correct record | .2 |
| 01/17/2013 | Review e-mail from JNP to USA re: correction of record | .1 |
| 01/17/2013 | Review USA e-mail re position on not to correct record | .1 |
| | | **TOTAL: 1.5 hrs** |

  **B.**  **Grievance with the Court**

  I note that Ms. Neal-Post billed several hours to discuss with co-counsel her dissatisfaction with me as the presiding judge in this case. While Ms. Neal-Post is certainly

entitled to express her opinion about me or any other judge of this Court, I do not consider such time as reasonably expended protecting the rights of the indigent Defendant. Accordingly, I am disallowing compensation for the following time entries:

| Date | Description | Time |
|---|---|---|
| 12/06/2012[3] | T/C Rosenstein on mot to compel and mot to recuse AUSA, court's continuing irritation with defense and apparent protection of government; how to present/preserve under circumstances | .8 |
| 01/09/2013[4] | Discussion w/ co-counsel on court bias; authorities on denial does not equate to frivolousness; inability to make a record | .5 |
| 01/15/2013[5] | Review of preservation materials for whether we should bother writing reply when they aren't being read/is current preservation sufficient? | .3 |
| 01/17/2013 | Conference w/ Rein on targeting counsel as pro bono and potential for exclusion from evidentiary hearing based upon Order at 369 n.1 and order on complexity Doc 363- "Rein issue" under advisement or the like… | .4 |
| 01/17/2013 | Call to access to justice board of state bar on singling out of pro bono counsel and interference with counsel Richard Stinello and Tina Sibbett | .2 |
| 01/17/2013 | LEXIS on pro bono counsel; pulling Caplin and Drysdale v. United States, 491 U.S. 617, 624-25 (U.S. 1989) | .5 |
| 01/17/2013 | LEXIS on deprivation of counsel Rein | .8 |
| 02/14/2013[6] | T/C with Rosenstein re court mess; loss of | .4 |

---

[3] Ms. Rosenstein also has an entry for this telephone conference.
[4] Ms. Rosenstein also has an entry for this conference.
[5] Ms. Rosenstein also has an entry for this conversation.

| | | |
|---|---|---|
| | discovery hearing. Status conference on WHAT?; arrangement to be together as required by court order; where; how | |
| | | **TOTAL: 3.9 hrs** |

Ms. Rosenstein's request will also be deducted 2 hours for these conversations with Ms. Neal-Post regarding her disagreement with how I ruled on certain matters.

At this point, Ms. Rosenstein's request will be deducted as outlined above by 3.5 hours. Ms. Rosenstein's request now stands at 5.2 hours of in court services, 145.1 hours of out of court services, $128.04 for travel expenses, and $312.25 for other expenses for a total amount of $19,227.79.

At this point, for the reasons discussed previously, Ms. Neal-Post's request will be deducted by 6.7 out of court hours. Ms. Neal-Post's request now stands at 5.2 hours of in court services, 237 hours of out of court services and $313.36 for travel expenses for a total request of $29,939.36.

    **C.    Further Adjustment to Requested Fees**

Finally, with almost twelve years experience as a district judge of this Court and having reviewed countless numbers of CJA vouchers by many CJA attorneys on a wide variety of cases, I find that further reduction of Defense counsels' requested fees is appropriate. In allowing both counsel to be appointed to represent Defendant in this case under the CJA, my understanding based on defense counsels' representations was that one attorney would be doing the research and writing while the other would be handling the litigation. However, this case was not a capital case nor was it a case where a defendant is accused of selling classified nuclear weapons information to a foreign government. This was a case where the Defendant, having been found

---

[6] Ms. Rosenstein also has an entry for this telephone conference.

not guilty on the death count but guilty on the lesser count, was confronting a sentencing guideline offense level of 16, criminal history category I, which results in an advisory guideline sentencing range of 21 to 27 months. Of course this advisory guideline sentencing range does not take into account potential objections to the guideline calculations nor does it take into account potential departure and/or variance issues. With that being said, I do not in any way want to minimize the impact on the Defendant upon learning her sentencing guideline exposure and I recognize that as a licensed physician, had the Defendant been sentenced based on a felony conviction, she would likely lose her license to practice medicine. What I am saying is that considering the guilty verdict on Count 2 and the potential sentencing exposure of Defendant, one CJA attorney or one assistant Federal Defender would normally represent a defendant under similar circumstances even if there were comparable conflict issues present like the ones in the instant case. I granted both counsel's request to represent Defendant under the CJA because I was persuaded by counsel's entreaty quoted above that Attorneys Rosenstein's and Neal-Post's collective knowledge of the case would be the most expeditious and cost effective way to proceed.

As a district judge charged with the task of approving CJA requests, I have discretion to calculate a reasonable number of hours expended by counsel in this case. *See United States v. Adkinson,* 360 F.3d 1257, 1259 (11th Cir. 2004) (CJA fee awards subject to limitations in Equal Access to Justice Act, §2412(d)(2)(A)); *United States v. Claro,* 579 F.3d 452 (5th Cir. 2009) (district court retains discretion to reduce amount of hours to amount that is reasonable).

As noted above, I was under the impression that Ms. Neal-Post would do the writing and research and Ms. Rosenstein would handle the court appearances. However, both attorneys

billed for attending hearings and for writing and research.[7] I agreed to appointing two separate attorneys because I believed that these attorneys would fulfill two different roles. While I recognize that in some instances counsel needed to coordinate even though they were working on different parts of the case, counsel defeated the purpose of having a lead counsel and a writing and research counsel by having each attorney bill for doing both types of work, and in some instances the exact same work[8].

In addition to having counsel bill for fulfilling the same role, counsel also billed for completing the exact same task.[9] Also, counsel billed for excessive review of each other's work.[10] For all these reasons, I find that the overall amount billed in this matter is excessive. Therefore, I am further reducing both counsel's fee requests by 25 percent, allowing Ms. Rosenstein a fee award of $14,420.84 (reducing the fee further by $4,806.95), and allowing Ms. Neal-Post a fee award of $22,545.67 (reducing the fee further by $7,484.89). I find that these amounts adequately and reasonably compensate counsel for representing the Defendant while protecting her rights as an indigent defendant awaiting sentencing in a federal criminal case.

---

[7] For example, Ms. Neal-Post billed to attend hearings, as well as to review the minutes of each hearing and to discuss each hearing with Ms. Rosenstein. Similarly, Ms. Rosenstein billed to review case law for motions that Ms. Neal-Post researched and wrote, as well as to review and edit the motions themselves.

[8] On February 10, 2013, both attorneys billed to review Rinaldi, presumably because of its relevance to Defendant's argument regarding her conviction even though Ms. Neal-Post was in charge of research and writing and would have been responsible for actually drafting a motion based upon this case. Further, Ms. Neal-Post billed for drafting an e-mail to Ms. Rosenstein regarding Rinaldi's effect on the case, Ms. Rosenstein billed to read that e-mail, and both attorneys billed for a telephone conference with each other discussing this case. This is just one example of how counsel essentially charged for doing the same work. It also an example of how counsel billed an excessive amount of time to resolve this matter.

[9] On November 26, 2013, both attorneys billed to coordinate a videotaping of Mr. Harris' with the investigator via e-mail, even though it appears both Ms. Rosenstein and Ms. Neal-Post were simply reading the exact same e-mail from the investigator. Further, counsel also billed for a conference with each other regarding the e-mail with the investigator. This is just one example of when counsel completed the same task when it was not necessary for them to do so.

[10] For instance, on February 26 and 27, 2013, Ms. Rosenstein billed to review each and every e-mail that Ms. Neal-Post sent to the United States Attorney's Office regarding the plea documents, to review all of the plea documents themselves, and billed over an hour to discuss each of those documents with Ms. Neal-Post. Ms. Neal-Post of course billed for drafting those same documents and e-mails. While plea discussions are extremely important, if Ms. Neal-Post was the one drafted the documents and coordinated with the government, Ms. Rosenstein does not need to essentially double bill for those documents. Further, any information regarding those documents could have been passed on to Ms. Rosenstein during the lengthy conference.

**IT IS THEREFORE ORDERED** that Ms. Rosenstein will be compensated for a total amount of $14,420.84; and Ms. Neal-Post will be compensated a total amount of $22,545.67. The Court finds that these amounts adequately and reasonably compensate counsel for representing the Defendant while protecting her rights as an indigent defendant awaiting sentencing in a federal criminal case.

**IT IS FURTHER ORDERED** that the Clerk of the Court prepare revised CJA invoices for Attorneys Rosenstein and Neal-Post consistent with the amounts herein approved.

_____
UNITED STATES DISTRICT JUDGE